6-96-028-CV Long Trusts v. Dowd 


















In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00125-CV
______________________________



IN RE: 
JOHNNIE TASBY





                                                                                                                                                             

Original Mandamus Proceeding





                                                                                                                                                             
                          


Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Chief Justice Morriss



O P I N I O N

            Relator, Johnnie Tasby, has filed a petition for writ of mandamus praying that this Court
order the Honorable Bill Peek of the 202nd Judicial District Court of Bowie County to pronounce
sentence on him, under a conviction had on March 4, 1982. In his petition, Tasby argues Judge Peek
has the legal duty to hear and proceed to judgment on his "Amended or Second Nunc Pro Tunc
Motion" to perform the final pronouncement of judgment and sentence. We deny Tasby's petition.
            On March 4, 1982, a jury convicted Tasby of aggravated robbery and imposed an enhanced
sentence of life in prison. Honorable Guy E. Jones presided over the court at the time. Judge Jones'
authority to pronounce sentence against Tasby forms the basis of Tasby's petition. He argues Judge
Jones had not filed with the Texas Secretary of State the anti-bribery oath, as required by the Texas
Constitution. See Tex. Const. art. XVI, § 1. Therefore, argues Tasby, Judge Peek, currently
presiding over the 202nd Judicial District Court, must rule on Tasby’s motion and proceed to
pronounce sentence against Tasby. 
            This Court will grant mandamus relief if relator can demonstrate that the act sought to be
compelled is purely "ministerial" and that relator has no other adequate legal remedy. State ex rel.
Rosenthal v. Poe, 98 S.W.3d 194, 198 (Tex. Crim. App. 2003). To satisfy the "ministerial act"
requirement, the relator must show "a clear right to the relief sought," meaning that the relief sought
must be "clear and indisputable" such that its merits are "beyond dispute" with "nothing left to the
exercise of discretion or judgment." Id. Mandamus does not lie to correct a trial court's ruling on
an unsettled or uncertain question of law. Id. A writ of mandamus will issue only to correct an
abuse of discretion for which the appellate remedy is inadequate. Walker v. Packer, 827 S.W.2d
833, 839-40 (Tex. 1992).
            Initially, we note that the current oath required under Article XVI was amended in 1989. 
Tasby  provides  documentation  from  the  Secretary  of  State  that  the  oath  required  by  amended
Article XVI was filed on October 9, 2000. Tasby's argument fails, and this document offers us no
relevant evidence because Tasby was convicted in 1982, well before the amended anti-bribery oath
was required to be filed with the Secretary of State. We have no evidence before us of which oaths
were or were not taken or filed by Judge Jones as of March 4, 1982.
            Further, even if Tasby had produced evidence of Judge Jones' failure to file an oath as
required at the time of Tasby's conviction, we would need more evidence to hold that the judge was
without authority to act. Our sister courts have held that the failure to show that an oath was not
filed does not establish that the oath was not taken. Thomas v. Burkhalter, 90 S.W.3d 425, 427 (Tex.
App.–Amarillo 2002, pet. denied); Soderman v. State, 915 S.W.2d 605, 611-12 (Tex. App.–Houston
[14th Dist.] 1996, pet. ref'd, untimely filed). It is the latter inquiry, concerning the taking of the oath,
that determines whether the judge was acting without authority. See Thomas, 90 S.W.3d at 427;
Soderman, 915 S.W.2d at 611-12. Failing to file an oath of office does not, alone, deprive the judge
of the authority to act. See Thomas, 90 S.W.3d at 427. So, had the document from the Secretary of
State addressed the oath required of Judge Jones as of March 4, 1982, it alone still would be
insufficient evidence on which to grant the relief Tasby seeks.
            For the foregoing reasons, we will not issue a writ of mandamus to compel Judge Peek to rule
on Tasby's "Second or Amended Nunc Pro Tunc Motion" and proceed to pronounce judgment
against him. Tasby has not established a clear right to such relief. We have no evidence before us
that would lead us to conclude sentence was not properly pronounced by Judge Jones on March 4,
1982. Accordingly, we deny Tasby's petition for writ of mandamus. 
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          October 20, 2003
Date Decided:             October 21, 2003



nto the pump jack or into the river, it was done with a reckless state of mind. Kay bases
that argument on the jailhouse letter he wrote to Higginbotham. We quote the relevant portions of
the letter, seeking to be as faithful to the original spelling and punctuation as possible in this format:
Rember they can't charge us with "capiotal" murder capiotal murder is premendataed
the part about the truck be sure that it was a "Accident" that we did not mean it, and
the pump jack, is we felt bad because the boy was suffering as long as it was a
accient they can only get us on murder and try to (get it down to) us involitary
manslayer. . . . (1) Murder runs form 5 years to life (2) Manslayer runs form 5 years
to 20 years >< so we might get lucky.>
 
The part aboat the truck we need to say that you was going to turn it around and do
some dounts so you gased it. At the same time I hit him and it knocked him in to the
truck. The truck pulled him under then I hollowed when the truck hit him But he was
pented under so we had to back up to get him out We got him out you got out of the
truck We didn't know Whatt to do. He was almost dead No Body would belivle us
at the hospital. And we pantice.
 
OR Something Like that tEell me what you think. Becauze wev'e got to make are
state ments the same.
We have emphasized certain words and phrases above which convince us—as it did the trial
court—that this letter is simply an effort to coach Higginbotham on what to say, or to harmonize the
stories the two would tell, in order to minimize the punishment for what they had done. We do not
believe any rational juror could interpret this letter as an effort to recount what actually happened. 
Instead, the letter can be read only as an effort to coach Higginbotham to lie. We note that there is
no actual claim of accident or recklessness made in the letter and that it entirely consists of story
elements proposed by Kay to Higginbotham concerning which Higginbotham is requested to
comment. We see no evidence in it that would support a rational jury finding of a "reckless" state
of mind, as is urged by Kay.
            Though not explicitly referenced in his appellate brief, Kay also arguably relies on two letters
from James Hayes to Kay, two transcribed statements Hayes gave to police, and Hayes' trial
testimony. We have examined those and find no evidence that could support a jury finding that
Kay's state of mind was reckless only. We briefly review them below.
            Letter A, from Hayes to Kay, reads, in pertinent part:
I hate what happened but I totally blame Aaron he was pumped up / I understand but
thats [sic] a little much to do! . . . You and I beleave [sic] my Bro is that you was
[sic] just put in a bad situation trying to help a bro out and ended upon [sic] the laws
[sic] very pissey [sic] side.

Nothing in the above letter suggests any reckless state of mind.
            Letter B, from Hayes to Kay, adds, "I wish you would have not tried to help Arrons [sic] puck
[sic] killer ass. I know it was all his fault and I hate him for his supidity [sic]." Nothing in that letter
suggests recklessness.
            Hayes' June 26, 2003, statement to police contains a number of statements, none of which
would support a finding of recklessness:
Aaron was upset, cause him and his old lady was fighting, she had left him or
something.
 
Dwain [i.e., Kay] recommended . . . to get Aaron away from Gladewater, . . . to keep
Aaron out of trouble.
 
[The next morning,] I checked my phone. . . . When I saw that they didn't call, I
knew that they probably were in trouble somewhere and probably were in jail. I
knew when I left them that Aaron [was] mad about his old lady, he was a ticking time
bomb.
 
[Kay] told me that something about Aaron and him got into it with somebody last
night and that Aaron hurt the boy.
 
Dwain is not the type to go and beat somebody down like that. You pretty much
have to offend him first. Aaron is the type that he would hurt anybody.
 
Hayes gave another statement to police, January 21, 2005, which contained this statement, "I . . .
remember now that Dwan told me that when the boy got on his knees to have oral sex he started
beating him. He also told me that they had hurt somebody. He said that after beating the boy they
threw him into a pump jack." Nothing in the above quotes suggests a reckless, as opposed to an
intentional or knowing, state of mind.
            Other than portions of Hayes' testimony that undermined his credibility, in only one place
does any of his live trial testimony tend to exonerate Kay. Hayes acknowledged in his testimony
that, in his first letter to Kay, he wrote that he knew "it was all Aaron's fault." Hayes' explanation
for that early statement was that he had once thought that, but had reconsidered and realized it took
two to do what had been done to Hendrix. That claim is no evidence of a reckless state of mind.
            Because we find no evidence of a reckless state of mind, we overrule Kay's sole point of error
and affirm the judgment of the trial court.



 
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          November 14, 2005
Date Decided:             December 1, 2005

Do Not Publish