In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-06-070 CV


____________________



IN RE PLAINS MARKETING, L.P. and DARRELL E. COOPER






Original Proceeding






OPINION


 Relators, Plains Marketing, L.P., and Darrell E. Cooper, request relief from a pretrial
discovery order issued by respondent, the Honorable Donald Floyd, presiding judge of the
172nd District Court, Jefferson County, Texas. The underlying lawsuit was filed by real
party in interest, Shirley Rawls, for injuries she allegedly received from an automobile
collision between Rawls and Darrell E. Cooper, who was employed at the time of the
accident with Plains Marketing, L.P., said collision taking place on September 23, 2000. In
the course of the litigation, relators retained Dr. Andrew Levine, a retired orthopedic
surgeon, to review all of Rawls' medical records from before and after the collision in
question. From the records reviewed, Dr. Levine issued three reports, with two reports
containing his opinions regarding the cause of Rawls' physical complaints following the
collision in question. Rawls subsequently deposed Dr. Levine on January 13, 2006, for
approximately four and one-half hours. 

 During the course of his deposition, Dr. Levine stated that he stopped performing
orthopedic surgery "a little over two years ago," and since then his medical practice involved
mostly consulting. Because he was doing more office orthopedics and more record reviews,
Dr. Levine felt he could not continue to perform surgeries on a regular basis and also be
available for depositions or reviewing records. As a result, Dr. Levine stated that he chose
to "take my practice in a different direction at that time." After admitting to having worked
for the litigation defense firm representing relators fifteen times, Dr. Levine later indicated
that he retained his medical evaluation reports in written form from lawsuits in which he was
consulted and/or in which he testified at trial. When asked specifically if these reports were
on his office computer, Dr. Levine replied that they were not on computer but were "hard
copies in boxes, and some are in storage." When Rawls' counsel asked Dr. Levine if he
could make copies of these reports, Dr. Levine stated: 

 I think that would be very burdensome upon my staff here. I only have one
person working and it would be hard to look up all of those and find them. 
They were generated, you know, at the time they were requested and I
wouldn't know right offhand who they are. 

 Following the January 13, 2006, deposition, Rawls' counsel noticed a second
deposition of Dr. Levine for February 22, 2006, with a request for production of "hard copies
of all reports he has prepared since 1996 in connection with his work as an expert witness
in the medical field." Subsequently, relator filed a motion to quash the second deposition and
a motion for a protective order. A hearing was held, during which Rawls' counsel attempted
to explain his need for ten years' worth of medical evaluations by Dr. Levine from unrelated
litigation: 

 [Rawls' Trial Counsel]: And, so, the new rules provide a limited
number of means in which to get these type of records. The rule specifically
says - - 192.3(e)(5) specifically states that the bias of a witness is discoverable. 
The rules of evidence specifically state that it's relevant. So I can get that
information. There is case authority that I can get that information.


 . . . . 


 . . . He has testified in his deposition that he has winded down his
medical practice, that he's probably only got - - he only sees about four or five
patients a week. He doesn't even have a nurse on schedule; he has a secretary
on schedule. He doesn't treat patients any more, except for little old nominal
problems. And what he does now for a living is not practice medicine, but
practice testifying. He is a professional expert.


 . . . .


 . . . [T]his is a professional witness who has stated that he intends to
make his living for the rest of his career out of testifying, and I'm entitled to
get those records, Your Honor. 


 "Mandamus relief is appropriate only if the trial court abused its discretion or violated
a legal duty, and there is no adequate remedy at law, such as an appeal." In re Dana Corp.,
138 S.W.3d 298, 301 (Tex. 2004)(orig. proceeding) (citing Walker v. Packer, 827 S.W.2d
833, 839 (Tex. 1992) (orig. proceeding)). "A trial court's ruling that requires production 

beyond what our procedural rules permit is an abuse of discretion." Id. (citing Texaco, Inc.

v. Sanderson, 898 S.W.2d 813, 815 (Tex. 1995)(orig. proceeding)). "If an appellate court
cannot remedy a trial court's discovery error, then an adequate appellate remedy does not
exist." Id. (citing Texaco, 898 S.W.2d at 815). 

 Pertinent to the issue before us is the continued viability of the holding in Russell v.
Young, 452 S.W.2d 434 (Tex. 1970), in light of the Supreme Court's subsequent
promulgation of Tex. R. Civ. P. 192.3(e)(5), which permits discovery of information
regarding an expert witness's bias. In Russell, as in the instant case, a party sought wholesale
discovery of certain records of a potential medical expert witness who was not a party to the
lawsuit. Russell, 452 S.W.2d at 435.

 To establish bias or prejudice, "an expert medical witness may be cross-examined
regarding the number of times he has testified in lawsuits, payments for such testifying and
related questions." Id. at 436. Furthermore, "[p]roof of bias may be offered to impeach the
credibility of a witness." In re Weir, 166 S.W.3d 861, 864 (Tex. App.--Beaumont 2005, orig.
proceeding) (citing Tex. R. Evid. 613(b)). Nevertheless, Tex. R. Civ. P. 192.3(a) provides
that the discovery matter requested must be "relevant to the subject matter of the pending
action" and the information sought must appear "reasonably calculated to lead to the
discovery of admissible evidence." Tex. R. Civ. P. 192.3 (a).

 In the instant case, Rawls does not specify what information contained in Dr. Levine's
medical examination reports prepared for various unrelated lawsuits would show his bias or
prejudice with regard to Rawls or her cause of action against relators. During his deposition,
Dr. Levine did not deny that he derived significant income from medical consulting work for
litigation defense firms, having worked with relator's counsel's firm alone on fourteen prior
occasions. See Tex. r. Evid. 613(b) (Extrinsic evidence of bias is not admissible if the
witness "unequivocally admits such bias or interest."). 

 While Russell v. Young was decided in 1970, well before the Court's promulgation
of Rule 192.3, the opinion does exhibit a far-sighted perspective, noting that pretrial
discovery procedures, although "relatively new" at that time, were "consistently growing in
breadth." Russell, 452 S.W.2d at 437. Nevertheless, the Russell Court was not prepared to
authorize pretrial discovery procedures with unlimited scope, as the Court explained.

 There is, however, a limit beyond which pre-trial discovery should not be
allowed. It is admitted by Hardware Insurance Company that its attempted
pre-trial discovery of relator's records is for impeachment purposes only. 
Relator has not yet taken the witness stand nor has his deposition been
introduced into evidence because there has not yet been a trial; relator's
records cannot possibly have impeachment value because there is nothing yet
to impeach and there may never be anything to impeach, depending upon the
contents of the testimony, if any, which is introduced during the trial of the
lawsuit. 


Id. Although factually distinguishable, the Court later cited Russell with approval in Walker. 
See Walker, 827 S.W.2d at 838-39. Additionally, it appears the Supreme Court did not
intend to overrule Russell with its promulgation of Rule 192.3(e)(5). The Court's
explanatory statement accompanying the 1999 amendments to the Rules of Civil Procedure
governing discovery states in pertinent part:

 The notes and comments appended to the rules, unlike most other notes and
comments in the Rules of Civil Procedure, are intended to inform their
construction and application by both courts and practitioners. 


 . . . .


 These revisions recognize the importance of discovery as well as the
necessity for reasonable limits. The scope of discovery, always broad, is
unchanged.


Explanatory Statement Accompanying the 1999 Amendments to the Rules of Civil Procedure
Governing Discovery, 977-978 S.W.2d (Tex. Cases) xxxv (Tex. Nov. 9, 1998); see also In
re Weir, 166 S.W.3d at 865.

 In Walker, the Court contrasted the requested discovery disapproved in Russell with
the discovery request made of the medical expert in the Walker litigation:

 The present case is distinguishable. Here, the Walkers presented to the
trial court evidence of a specific circumstance - - the [University of Texas
Health Science] Center's policy restricting the faculty's freedom to testify for
plaintiffs - - raising the possibility that Dr. Gilstrap is biased. Thus, the
Walkers are not engaged in global discovery of the type disapproved in
Russell; rather, they narrowly seek information regarding the potential bias
suggested by the witness' own deposition testimony and that of his
professional colleague.


Walker, 827 S.W.2d at 838. In the instant case, Rawls' discovery request suffers from the
same infirmity as the discovery request in Russell. It is not narrowly tailored but is of a
global type disapproved in Russell. Furthermore, here the discovery requests medical
information, possibly confidential, and the expert witness provided the court an affidavit
detailing the considerable time and expense involved in responding to the discovery request. 
The limitations on discovery of information from a non-party expert witness sought solely
in an attempt to impeach the potential witness as to his bias or prejudice, as discussed in
Russell, are not unreasonable, and appear consistent with the general requirement that the
party seeking the information make a showing that it is "relevant to the subject matter of the
pending action," and that the information sought "appears reasonably calculated to lead to
the discovery of admissible evidence." See Tex. R. Civ. P. 192.3(a). "The trial court must
limit the scope of discovery to protect against unreasonably cumulative or duplicative
discovery, and to protect against unnecessary burden or expense." See In re Weir, 166
S.W.3d at 864; (citing In re Sears, Roebuck & Co., 146 S.W.3d 328, 332 (Tex. App.--Beaumont 2004, orig. proceeding)). Because the record before us fails to show what
information from his medical reports from past unrelated litigation could lead to the
discovery of admissible evidence without undue burden or expense, respondent abused his
discretion by ordering relator to produce the reports. As relator has no adequate remedy at
law, we conditionally grant the requested relief. The writ will issue only if the respondent
fails to vacate his order of February 23, 2006, requiring production of the medical reports in
question.



 WRIT CONDITIONALLY GRANTED. 

 PER CURIAM

Submitted on May 28, 2006

Opinion Delivered June 1, 2006



Before Gaultney, Kreger and Horton, JJ.