**KAISER FOUNDATION HEALTH PLAN OF TEXAS, et al., Relators,**

v.

**Honorable Wayne BRIDEWELL, Judge, 249th Judicial District Court, Johnson County, Texas, Respondent.**

**No. 10–97–177–CV.**

Court of Appeals of Texas, Waco.

June 18, 1997.

R. Michael McCauley, Carla S. Neal, McCauley, MacDonald & Devin, P.C., Dallas, for Relators.

Rickey J. Brantley, David E. Keltner, Karen S. Precella, Jose, Henry, Brantley & Keltner, L.L.P., Fort Worth, Robert W. Hammer, Law Offices of Robert W. Hammer, Fort Worth, Dale Williams, Williams Patillo & Squires, L.L.P., Waco, for Respondent.

Before DAVIS, C.J., and CUMMINGS and VANCE, JJ.

## MEMORANDUM OPINION

PER CURIAM.

Relators Kaiser Foundation Health Plan of Texas, Permanente Medical Association of Texas, Kaiser Foundation Hospitals, and Kathleen M. Robertson, M.D. filed a motion seeking leave to file a petition for writ of mandamus against Respondent, the Honorable Wayne Bridewell, Judge of the 249th Judicial District Court, Johnson County. Donald and Diane Karna, individually and as next friends of Daniel and Kyle Karna, are the real parties in interest. Relators seek a writ of mandamus to require Judge Bridewell to vacate his orders of May 29, 1997, denying Relators' motion for continuance and their motion for separate trial.

On May 30, we granted Relators' motion for leave to file a petition for a writ of mandamus against Judge Bridewell. At the same time, we temporarily stayed proceedings in the trial court under TEX.R.APP. P. 121(d). We will deny the petition.

## FACTUAL BACKGROUND

The Karnas filed suit against Relators Permanente Medical Association of Texas ("Permanente") and Robertson in the 249th Judicial District Court of Johnson County on January 5, 1996. The suit is styled *Diane Karna, et al. v. Permanente Medical Ass'n of*

*Texas, et al.,* Cause No. 4–96. The factual basis of the Karnas' suit stems from treatment Mrs. Karna received from Dr. Robertson, her gynecologist. The parties do not dispute that Robertson is an employee of Permanente. During the pertinent time-period, Mrs. Karna was a member of Relator Kaiser Foundation Health Plan of Texas, a health maintenance organization ("Kaiser Health Plan"). Apparently, Permanente physicians provide medical care to Kaiser Health Plan members pursuant to a contract between these two organizations.

Robertson performed a hysterectomy on Mrs. Karna in 1991. Robertson observed unusual nodules and implants as she conducted the operation and collected some tissues for identification. The pathologist could not provide an immediate identification. Robertson excised Mrs. Karna' uterus, her left fallopian tube, and her left ovary. According to Robertson, she did not remove the right tube and ovary because they showed no signs of the unusual formations observed on the left side and because the pathologist had not yet identified a malignancy.

Further testing revealed a malignancy known as endolymphatic stromal myosis/sarcoma. According to Robertson, she reviewed the test results and the observations she made during surgery with a gynecological oncologist who in turn consulted with other gynecologists. The oncologist advised Robertson to conduct physical examinations of Mrs. Karna every six months and a CT scan annually. He indicated that chemotherapy or radiation treatment would be ineffective and removal of the right tube and ovary was unnecessary. Robertson pursued this course of treatment.

In the spring of 1995, Mrs. Karna began to experience severe abdominal pain. Robertson recommended another operation which she performed on June 22 of that year. Robertson discovered that the malignancy had spread to Mrs. Karna's right tube and ovary. She solicited another gynecological oncologist to perform the operation. Biopsies completed after the surgery revealed that the malig-

nancy had spread to other parts of Mrs. Karna's body.

The Karnas allege that Robertson did not advise Mrs. Karna that she had a malignancy until after the biopsies performed in 1995. They contend that to the contrary, Robertson repeatedly told Mrs. Karna that she did not have cancer, despite the findings of the 1991 tests.

## PROCEDURAL HISTORY

The Karnas filed a second amended petition on August 30, 1996, which added Kaiser Health Plan, Kaiser Permanente Insurance Company ("Kaiser Insurance")[1], and Kaiser Foundation Hospitals ("Kaiser Hospitals") as parties defendant. The amended petition alleges that with the exception of Robertson, each of the Relators "is an altar ego of the other and is responsible for the other's activities." On this basis, the Karnas seek to hold these entities liable under joint enterprise, joint venture, and partnership by estoppel theories.

The second amended petition alleges that Kaiser Health Plan and Kaiser Insurance encourage their physicians to avoid referral of patients to specialists. The Karnas contend that this conduct "constitutes a breach of contract, a breach of the duty of good faith and fair dealing, intentional misrepresentations, fraud, a breach of fiduciary duty and negligence."

They further allege that the contracts executed by Kaiser Insurance, Kaiser Health Plan, and Kaiser Hospitals with physicians provide financial disincentives which discourage treatment for persons like Mrs. Karna who require specialized care. They contend that these disincentives and the failure to disclose them constitute "a breach of contract, a breach of [these] Defendants' duty to act with good faith and deal fairly with Plaintiffs, a civil conspiracy, misrepresentations, a breach of a fiduciary relationship[, negligence,] and outright fraud."

The second amended petition also alleges nineteen means by which Kaiser Health Plan

---

1. Kaiser Insurance is not a party to this mandamus proceeding. The Karnas omitted the com-

pany from their third amended petition.

and Kaiser Insurance violated TEX.REV.CIV. STAT. ANN. art. 21.21 (Vernon 1981 & Supp. 1997).

The Karnas' generally allege that Robertson failed "to provide proper care, diagnosis, and treatment to [Mrs.] Karna which was negligent and proximately caused the injuries sustained...."

Their petition alleges that Permanente was negligent in failing to timely refer Mrs. Karna to a specialist, in creating an environment which perpetuates negligent conduct, in perpetuating false, misleading and deceptive business conduct, and in failing to adequately supervise the quality of Mrs. Karna's medical care and treatment. The Karnas also seek to hold Permanente liable for Robertson's conduct on respondeat superior, altar ego, and ostensible agency theories.

Relators generally denied the allegations of the Karnas' petition.

On March 3, 1997, the court set the case for trial on the week of June 16 at the request of the Karnas. Counsel for Relators advised of a conflict with this setting, and the parties agreed to move the case to the week of June 2.

The Karnas filed a third amended petition alleging additional causes of action and damages claims on May 23, ten days before trial. The third amended petition also deletes Kaiser Insurance as a defendant. That same day, Relators each filed amended answers. In these answers, Relators assert among other defenses that the Karnas' claims are barred by the statute of limitations and that they cannot recover any damages for Mrs. Karna's decreased life expectancy. In response to Relators' amended answers, the Karnas obtained leave of court to file a supplemental petition asserting the discovery rule and fraudulent concealment in response to Relators' limitations claim.[2]

Relators filed a motion for separate trial on May 20. The court set the motion for hearing on May 29. Relators filed a motion for continuance on May 27 essentially alleging that they were surprised and prejudiced by the new allegations contained in the Karnas' third amended petition. The court set this motion to be heard with the motion for separate trial.

At the hearing on Relators' motions, the court reviewed the pleadings and heard argument of counsel before ruling. The court granted the Karnas leave to file their supplemental petition and granted them leave to strike allegations in the third amended petition that Kaiser Hospitals had violated article 21.21. The court denied Relators' motions.

█ We will not issue a writ of mandamus unless the relator has no adequate legal remedy by appeal. *Walker v. Packer,* 827 S.W.2d 833, 842 (Tex.1992). "[A]n appellate remedy is not inadequate merely because it may involve more expense or delay than obtaining an extraordinary writ." *Id.* The relator bears the burden of showing it has no adequate remedy by appeal and that the court abused its discretion in taking the action of which the relator complains. *Canadian Helicopters Ltd. v. Wittig,* 876 S.W.2d 304, 305 (Tex.1994).

## THE MOTION FOR SEPARATE TRIAL

█ Rule 174(b) allows a trial court to order the separate trial of any number of claims or issues "in furtherance of convenience or to avoid prejudice." TEX.R. CIV. P. 174(b). The court has broad discretion in this matter, and its action on a request for a separate trial will not be disturbed absent an abuse of discretion. *Womack v. Berry,* 156 Tex. 44, 51, 291 S.W.2d 677, 683 (1956) (orig.proceeding); *Bolin v. Smith,* 294 S.W.2d 280, 284 (Tex.Civ.App.—Fort Worth, 1956, writ ref'd n.r.e.). A trial court's decision to deny a motion for separate trial is subject to review by mandamus. *Womack,* 156 Tex. at 51, 291 S.W.2d at 683.

When all the facts and circumstances of the case unquestionably require a separate trial to prevent manifest injustice, and there is no fact or circumstance supporting or tending to support a contrary conclusion, and the legal rights of the parties will

2. According to Relators, the Karnas filed the supplemental petition on May 27. The court later granted the Karnas leave to file this pleading during the hearing on Relators' motions for separate trial and for a continuance.

not be prejudiced thereby, there is no room for the exercise of discretion. The rule then is peremptory in operation and imposes upon the court a duty to order a separate trial. While the refusal to grant a separate trial under such circumstances is usually termed a clear abuse of discretion, it is nevertheless a violation of a plain legal duty.

*Id.* To find an abuse of discretion, we must determine that the facts and circumstances presented "extinguish any discretion in the matter." *F.A. Richard & Assoc. v. Millard*, 856 S.W.2d 765, 767 (Tex.App.—Houston [1st Dist.] 1993, orig. proceeding) (citing *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 918 (Tex.1985) (orig.proceeding); *Womack*, 156 Tex. at 51, 291 S.W.2d at 683).

∎ Having reviewed the Karnas' allegations, we cannot say that their respective claims against Robertson and the other Relators "unquestionably require a separate trial to prevent manifest injustice." *Womack*, 156 Tex. at 51, 291 S.W.2d at 683. Thus, we cannot conclude that the court abused its

discretion in denying Relators' motion for separate trial.[3]

### THE MOTION FOR CONTINUANCE

Relators assert that the court abused its discretion in denying their request to continue the June 2 trial date. The trial date has passed. Thus, this aspect of Relators' claim is moot. *See Teran v. Valdez*, 929 S.W.2d 37, 39 (Tex.App.—Corpus Christi 1996, orig. proceeding).

### CONCLUSION

Relators have failed to establish that the court abused its discretion in denying the motion for separate trial. Their claim that the court abused its discretion in denying the motion for continuance is moot. Thus, we deny the petition.

---

**3.** We do not preclude the possibility that evidence presented at trial will demonstrate to the contrary. However, under the facts and circumstances before us, we cannot say that the court clearly abused its discretion. *Womack*, 156 Tex. at 51, 291 S.W.2d at 683. If additional evidence is adduced at trial demonstrating otherwise, the law of the case doctrine will not prevent Relators from re urging their contention that the court abused its discretion in denying their motion. *See Dunn v. Stephens*, 435 S.W.2d 886, 887 (Tex. Civ.App.—Dallas 1968, writ ref'd n.r.e.).