

## NUMBER 13-05-585-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

---

**RICHARD QUINONES AND
YOLANDA MURPHY,**                                             **Appellants,**

**v.**

**STERLING JEWELERS, INC.
D/B/A KAY JEWELERS,**                                          **Appellee.**

---

**On appeal from the 148th District Court of Nueces County, Texas.**

---

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Benavides
Memorandum Opinion by Justice Garza**

Appellee, Sterling Jewelers d/b/a Kay Jewelers ("Sterling"),[1] sued appellants, Richard Quinones and his sister Yolanda Murphy, for a declaratory judgment that a diamond ring purchased by Quinones from Sterling in 1995, which remained in Sterling's possession since the date of purchase, was abandoned and belonged to Sterling. By

---

[1] Appellants incorrectly style the name of the appellee as "Sterling Jewelers a/k/a Kay's Jewelers." We will use the actual name of the appellee, "Sterling Jewelers d/b/a Kay Jewelers," which was also the name used to refer to the plaintiff throughout the trial court proceedings.

fourteen issues, appellants challenge a default judgment entered in favor of Sterling and the denial of appellants' motion for new trial. For purposes of organization, appellants' issues will be reordered, addressed as two, and referred to numerically as follows: (1) the trial court erred in denying appellants' motion for new trial; and (2) the trial court erred in granting a default judgment awarding declaratory relief and attorney's fees to Sterling. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1995, Quinones purchased diamonds from Sterling's retail store at the Padre Staples Mall in Corpus Christi. Quinones also purchased a mounting for the diamonds from the same store in March 1995, and he left the diamonds and the mounting at the store for repairs.[2] It is undisputed that Quinones paid in full for the ring. Sterling alleged that it tried to contact Quinones several times by mail and telephone over the course of ten years in an attempt to get Quinones to come to the store to claim the ring, but that Quinones did not respond to these efforts. Quinones alleged that he left the ring with Sterling for an appraisal which he claims was never provided. Quinones admitted, however, that he had made no contact with Sterling since 2001.

Sterling also alleged that, for insurance reasons, it was unable to store the ring in its Corpus Christi location and was forced instead to send the ring to its home office for storage. Sterling further contended that, at one point, Murphy promised to come into the store either with proof that she had a legal interest in the ring or with Quinones to retrieve the ring, but Murphy did not keep any appointment to retrieve the ring. Murphy denied these allegations. Sterling claimed it had incurred additional mailing and insurance costs as a result of Murphy's alleged promise. It was undisputed, however, that the ring has remained in Sterling's custody since the 1995 purchase date.

---

[2] Although Quinones initially purchased diamonds and a mounting from Sterling, at some point in time while in the custody of Sterling, the diamonds and the mounting were combined to form a ring. For convenience, we will refer to the diamonds and the mounting, whether separate or combined, as the "ring."

2

On October 1, 2004, Sterling filed its petition for declaratory relief, seeking (1) a declaration that the ring was abandoned by appellants pursuant to section 72.101(a) of the Texas Property Code, and (2) attorneys' fees from Quinones and Murphy.[3] *See* TEX. PROP. CODE ANN. § 72.101(a) (Vernon Supp. 2007); TEX. CIV. PRAC. & REM. CODE ANN. §§ 37.001-.011 (Vernon Supp. 2007).

Murphy was served with process at her residence in Corpus Christi, but she failed to file an answer. Quinones was served and filed his original answer pro se on February 17, 2005, denying all allegations set forth in Sterling's petition for declaratory relief. At the hearing on appellants' motion for new trial, Quinones acknowledged that he received a letter from Bertha Roldan, the court coordinator for the trial court, dated April 5, 2005. This letter notified Quinones of a docket control conference to be held by telephone conference call on April 12, 2005, at 9:30 a.m. Quinones called Roldan prior to the time of the conference.[4] According to an affidavit signed by Roldan, Quinones called Roldan on April 12, 2005, at which point Roldan informed trial counsel for both Quinones and Sterling that a bench trial had been scheduled for May 31, 2005, at 1:30 p.m. Quinones denied that he was advised of the bench trial date.

On May 31, 2005, at the time set for trial, neither Quinones nor Murphy appeared.[5] The trial court heard testimony from Ruben Barrera, the manager of the store where the ring was purchased. Barrera identified a photograph of the ring and testified that it is worth between twenty-five and thirty thousand dollars. Sterling presented to the trial court a

---

[3] Sterling's original petition for declaratory relief also included the following requests: (1) actual damages for the storage and transportation of the ring, including insurance fees; (2) pre-judgment and post-judgment interest; and (3) court costs. However, Sterling did not present evidence on these claims at trial and did not include any provision for relief on these claims in its proposed default judgment. Sterling therefore abandoned these claims for purposes of this appeal. *See* TEX. R. APP. P. 33.1 (stating that, to preserve an issue for appellate review, an appellant must have made a complaint to the trial court by a timely request, objection or motion).

[4] Quinones alleged that he called Roldan "a few days before the 12th" but that he did not talk to her on April 12th.

[5] Sterling's counsel asserted that she attempted to contact Quinones via telephone on the date of the bench trial, but Quinones's telephone was disconnected.

proposed "Final Default Judgment" against Quinones and Murphy, which the trial court signed. The final default judgment stated in relevant part:

> The Court further FINDS and ORDERS that the ring in question is abandoned pursuant to Texas Property Code § 72.101(a). The Court further FINDS and ORDERS that Plaintiff, STERLING JEWELERS, INC. D/B/A KAY JEWELERS, has sole legal interest in and rights to the ring in question and may dispose of the ring at its discretion.

> The Court ORDERS that Plaintiff recover damages from Defendants for attorney fees and court costs.

> Plaintiff requested attorney fees based on Texas Civil Practice & Remedies Code § 37.009. Plaintiff offered evidence at trial proving reasonable and necessary attorney fees in the amount of $1400. The Court orders Defendants to pay Plaintiff $1400 in attorney fees.

Quinones and Murphy timely filed a motion for new trial on June 28, 2005, and a hearing was held on that motion on August 17, 2005. The trial court denied the motion for new trial on September 13, 2005. This appeal ensued.

## II. DISCUSSION

### A. Motion for New Trial

Appellants assert by their first issue that the trial court erred in denying their motion for new trial. We disagree.

We review a trial court's denial of a motion for new trial for abuse of discretion. *In the Interest of R.R.*, 209 S.W.3d 112, 114 (Tex. 2007). A trial court should set aside a default judgment and grant a new trial if: (1) the failure to appear was not intentional or the result of conscious indifference but rather was due to accident or mistake; (2) the defendant sets up a meritorious defense; and (3) the motion for new trial is filed when it would not cause delay or otherwise injure the prevailing party. *Craddock v. Sunshine Bus Lines*, 133 S.W.2d 124, 126 (Tex. 1939); *Hahn v. Whiting Petroleum Corp.*, 171 S.W.3d 307, 310 (Tex. App.–Corpus Christi 2005, no pet.). This rule is applicable alike to motions for new trial which seek to set aside default judgments entered upon a failure of a defendant to file an answer, and those entered upon a defendant's post-answer failure to appear for trial. *See Ivy v. Carrell*, 407 S.W.2d 212, 213 (Tex. 1966).

4

Here, Roldan provided affidavit testimony that she notified Quinones of the trial date via telephone on April 12, 2005. Although appellants now claim that Roldan's affidavit is "hearsay and circumspect," they did not object to the affidavit when it was admitted into evidence at the hearing on their motion for new trial. Therefore, they have waived this issue on appeal. *See* TEX. R. APP. P. 33.1.

Although Quinones denied that Roldan notified him of the trial date, it was not an abuse of discretion for the trial court, as the trier of fact, to determine that Roldan's affidavit testimony was credible while the testimony of Quinones to the contrary was not.[6] *See Kaiser Found. Health Plan of Tex. v. Bridewell*, 946 S.W.2d 642, 646 (Tex. App.–Waco 1997, orig. proceeding) (per curiam) (stating that, to find an abuse of discretion, the reviewing court "must determine that the facts and circumstances presented extinguish any discretion [or choice] in the matter.").

With respect to Murphy, the uncontroverted evidence established that she was served with Sterling's petition and was aware of her responsibility to file an answer, yet she did not do so.[7] Because she failed to file an answer, neither Sterling nor the trial court

---

[6] We have previously held that, "[a]lthough a court which holds an evidentiary hearing and acts as the finder of fact is owed special deference because of its unique position to hear live testimony and resolve conflicts in the evidence," a court that issues findings based on "a cold record of deposition testimony, affidavits, and other evidence" is in "virtually the same position as the appellate court that reviews its findings" and so it is "unclear why the trial court's findings should be given any special deference" in those circumstances. *Villagomez v. Rockwood Specialties, Inc.*, 210 S.W.3d 720, 726-27 (Tex. App.–Corpus Christi 2006, pet. denied). Here, however, the trial court based its decision on more than just a "cold record"; it heard live testimony from Quinones and Murphy at the hearing on their motion for new trial. Thus, its findings are entitled to the "special deference" normally accorded to findings issued by a trier of fact. *See id.* at 727.

[7] Murphy testified as follows at the hearing on appellant's motion for new trial:

Q. Ms. Murphy, when you got the lawsuit, you went to attorney Jim Clancy here in town, didn't you?

A. Yes, I did.

Q. And you knew that the proper response to a lawsuit is to file an answer, correct?

A. Yes.

Q. And you did not do that, correct?

A. No. . . .

Q. Why did you not file an answer to the lawsuit?

5

coordinator were required to advise Murphy of the trial date.[8] *Long v. McDermott*, 813 S.W.2d 622, 624 (Tex. App.–Houston [1st Dist.] 1991, no writ).

The evidence established that the appellants' failure to appear for trial was either intentional or the result of conscious indifference. Appellants therefore failed to establish the first element under *Craddock*, and so the trial court did not abuse its discretion in denying appellants' motion for new trial. *See Craddock*, 133 S.W.2d at 126. Accordingly, we overrule appellants' first issue.

### B. Default Judgment

By their second issue, appellants allege that the trial court erred in awarding a default judgment granting declaratory relief and attorney's fees to Sterling. In light of our conclusion that appellants have failed to meet the first element of the *Craddock* test, we do not reach the issue of whether the final default judgment was proper on the merits.[9] *See* TEX. R. APP. P. 47.1. Further, appellants have provided no statutory or judicial authority indicating that we may reverse a trial court's default judgment without their establishing the first element of the *Craddock* test. To the extent appellants argue that we may vacate the default judgment on grounds other than those elucidated in *Craddock*, that

---

A.    Ignorance, I guess.

Q.    Ignorance of what? You conferred with Jim Clancy, right?

A.    Referring to my brother, because it wasn't my ring. Why should I have been sued?
       So I assumed I didn't have to do anything.

Q.    So you ignored the fact that you had been sued and served with citation?

A.    I guess so.

[8] It is not clear from the record whether Murphy ever had any legal interest in the ring. However, the record clearly reflects that Murphy failed to file an answer despite being properly served.

[9] We note that although relief was purportedly granted in the final default judgment pursuant to section 72.101(a) of the Texas Property Code, at no time did Sterling allege or produce any evidence that it complied with the requirements of chapter 74 of the property code, such as filing a report with and delivering the ring to the Texas Comptroller of Public Accounts. *See* TEX. PROP. CODE ANN. §§ 72.101(a), 74.101(a), 74.301 (Vernon Supp. 2007). These actions would have been necessary if in fact the ring was abandoned under section 72.101(a). *See* TEX. PROP. CODE ANN. §§ 72.101(a), 74.101(a), 74.301. Even so, because the appellants have not excused their absence at trial under *Craddock*, we do not reach the merits of the final default judgment. *See Craddock v. Sunshine Bus Lines*, 133 S.W.2d 124, 126 (Tex. 1939).

issue is inadequately briefed, and it is therefore waived.  *See* TEX. R. APP. P. 38.1(h).  We overrule appellants' second issue.

### III. CONCLUSION

We affirm the trial court's final default judgment and its denial of appellants' motion for new trial.

_____
DORI CONTRERAS GARZA,
Justice

Memorandum Opinion delivered and
filed this the 20th day of March, 2008.