# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-20-00504-CV

---

**In re Lucas Peter Peterson, East Branch Inc., and CLW, Inc.**

---

### ORIGINAL PROCEEDING FROM TRAVIS COUNTY

---

## M E M O R A N D U M   O P I N I O N

Relators Lucas Peter Peterson, East Branch Inc., and CLW, Inc., have filed a petition for writ of mandamus complaining of the trial court's order denying their motion to compel mental and physical examinations of real party in interest Amanda Hendrickson. We conditionally grant relief in part and deny relief in part.

## BACKGROUND

Hendrickson filed suit against relators for injuries she suffered in a multi-vehicle accident she alleged was caused by Peterson.[1] In February 2020, relators filed a motion to compel a physical examination, asserting that their retained expert, Dr. Anton Jorgensen, should be allowed to examine Hendrickson to determine the extent of her injuries and the proper treatment for those injuries. Hendrickson opposed the motion, asserting that Dr. Jorgensen had not reviewed her medical records or the testimony of her treating doctors, who had not yet been

---

[1] Hendrickson's petition alleges that Peterson was employed by East Branch Inc. "and/or" CLW, Inc.

deposed, and that relators thus could not show that the requested examination would produce relevant evidence. The trial court denied relators' motion "without prejudice for some material change."

In May, relators filed a second motion, seeking a physical examination and adding a request for a mental examination because issues about Hendrickson's mental state had been raised by her pleadings and medical records. Relators explained that Hendrickson's Physical Medicine & Rehabilitation expert had prepared a life-care plan stating that she will "require future medical care every year for the rest of her life" and that when she was deposed soon after the first motion was denied, Hendrickson had been unable to provide information about her physical and mental conditions and instead gave what relators characterized as "nebulous descriptive terms of her neck, mid and low back pain." Relators asserted that their experts had reviewed Hendrickson's medical records and needed to conduct the examinations to obtain "substantive" or "relevant" information and to allow them to provide credible testimony at trial. Hendrickson again objected, asserting that there had been "no material developments in this case since" the first motion to compel. She also asserted that relators had not had Dr. Jorgensen review her medical records, had not deposed her doctors, and had not shown "extenuating factors" that might call for an examination. Relators, she argued, had shown "no specified need for the independent examination other than general fact finding."

The trial court held a telephonic hearing on relators' second motion.[2] Relators explained that they had waited to refile their motion until after Hendrickson was deposed and that there were "multiple pages of her inability to talk about her medical care." Hendrickson

---

[2] The hearing was held via video conference due to COVID-19. *See* Second Amended Emergency Order Regarding COVID-19, Travis County Civil & Family Courts, Admin. File No. GN-61-121012, signed and filed May 7, 2020.

clarified that she would not seek damages related to mental suffering, stating, "[T]here is no mental claim in this case so that whole portion [of the motion to compel] should be moot." Hendrickson also stated that she would redact from her life-care plan anything "that might touch on" mental suffering or damages. Hendrickson further objected to relators seeking to compel Hendrickson to undergo an examination by Dr. Jorgensen, whose office is in San Antonio, and asked that, if an examination was ordered, it be held in Austin. Relators responded that Hendrickson's expert who prepared her life-care plan was in Minnesota and "not even licensed in the State of Texas," stating, "I'm only asking her to come down [I-35]. Their expert is across the United States." After taking the matter under advisement, the trial court signed an order in September denying relators' motion. This original proceeding followed.

## DISCUSSION

We may grant mandamus relief only when a relator shows that the trial court abused its discretion and that no adequate appellate remedy exists. *In re H.E.B. Grocery Co.*, 492 S.W.3d 300, 302 (Tex. 2016) (orig. proceeding) (per curiam). A "clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion." *Id.* (quoting *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992)). "We will disturb the trial court's decision only if it amounts to a clear and prejudicial error of law, or if it fails to correctly analyze or apply the law to the facts." *Id.* at 302-03. Thus, the relator has the burden of establishing "that the trial court could have reasonably reached only one conclusion." *Id.* at 303.

The rules of civil procedure set out the method for obtaining a court-ordered medical examination. *See* Tex. R. Civ. P. 204.1; *H.E.B.*, 492 S.W.3d at 303; *In re Savoy*, 607 S.W.3d 120, 125 (Tex. App.—Austin 2020, orig. proceeding). The movant must establish

3

(1) "good cause" for the examination and (2) that the opposing party's mental or physical condition "is in controversy." Tex. R. Civ. P. 204.1(c); *H.E.B.*, 492 S.W.3d at 303. "These requirements cannot be satisfied 'by mere conclusory allegations of the pleadings—nor by mere relevance to the case.'" *H.E.B.*, 492 S.W.3d at 303 (quoting *Coates v. Whittington*, 758 S.W.2d 749, 751 (Tex. 1988)).

In Dr. Jorgensen's affidavit, on which relators relied to establish their right to a physical examination, he stated that he had been retained to evaluate Hendrickson's alleged spinal injuries, "including the existence, cause, nature, extent, and proper treatment," and to evaluate her "level of function/impairment, course of past medical treatment, necessity of the previous and recommended future treatment, including surgery, and her prognosis." Dr. Jorgensen stated that he had reviewed "all of the medical records made available" to him and that, "to provide a more comprehensive analysis," he wanted to perform a "physical orthopedic examination of" Hendrickson's neck and back. Such an examination, he averred, would provide "clinical data relevant to determining the existence, nature, extent, and proper medical treatment" and would allow him to address Hendrickson's "physical restrictions and how those might impact her ability to perform her post-accident activities of daily living and/or employment." Dr. Jorgensen stated that he wanted "to make my own findings" about Hendrickson's "medical condition, level of physical ability, impairment, and need for surgery or other medical treatment for her alleged cervical and lumbar injuries" and that an independent examination "is the only way for me to directly observe [the patient] and obtain my own clinical data and findings." Finally, Dr. Jorgensen averred that a physical examination would allow him to "determine if the alleged need for a cervical surgery in the past and any additional future surgeries were/are medically necessary and beneficial to the patient." He stated that his examination would "not be

4

unnecessarily or unduly intrusive, invasive or uncomfortable" and that "[m]ost patients do not complain of any pain or discomfort" as a result of the proposed examination.

The purpose behind the good-cause requirement in rule 204.1(c) "is to balance the movant's right to a fair trial and the other party's right to privacy." *Id*. Thus, the movant must "show that the requested examination is relevant to issues in controversy and will produce or likely lead to relevant evidence," "establish a reasonable nexus between the requested examination and the condition in controversy," and "demonstrate that the desired information cannot be obtained by less intrusive means." *Id*. Hendrickson conceded in the trial court that her physical condition is in controversy and that "the requested examination is relevant to the issues in controversy in so far as there is a reasonable nexus between the injuries in controversy and the examination sought." *See* Tex. R. Civ. P. 204.1(c). She disagreed as to whether the sought physical examination was "warranted at this time" and whether the desired information could be obtained by less intrusive means.

Hendrickson did not dispute that the sought examination has a reasonable nexus to the issues in controversy—the nature, extent, and cause of Hendrickson's injuries—and relators explained that, after reviewing the medical records, Dr. Jorgensen still needed to conduct his own examination. Dr. Jorgensen explained why his own observations were important, albeit in no great detail, stating the examination would allow him to assess the existence, cause, and extent of Hendrickson's alleged injuries, as well as the efficacy of the treatment proposed by her doctors, the level of impairment caused by her injuries, and the impact of that impairment on her daily life. Relators noted that Hendrickson had been deposed and had only been able to give vague answers about her condition and the recommended treatments. We hold that relators established that an examination would provide relevant information and was warranted. *See*

5

*H.E.B.*, 492 S.W.3d at 303 (proposed physical examination would provide relevant information about plaintiff's "physical health—his past, present, and future injuries related to the fall and other causes"); *Savoy*, 607 S.W.3d at 126 (examination would seek information about history of plaintiff's "present problems" and evaluation of his "motor and sensory status, gait, balance, coordination, reflexes, and ranges of motion").

As for whether relators established that the desired information cannot be obtained through less intrusive means, Hutchinson has been examined by her own experts, whom she intends to call as witnesses to prove her injuries and treatment needs, and relators explained that they sought the same opportunity for their expert. *See Savoy*, 607 S.W.3d at 126; *see also H.E.B.*, 492 S.W.3d at 303-04 (plaintiff intended to prove causation and damages through expert testimony, plaintiff's expert had already examined him, "HEB merely seeks to allow its competing expert the same opportunity," and requiring HEB's expert to testify at trial without having examined plaintiff would put him "at a distinct disadvantage because it allows Rodriguez to call into question his credibility in front of the jury"). Relators showed that the examination was necessary for Dr. Jorgensen to provide relevant, credible testimony, and his ability to conduct a physical examination "goes to the heart of [relators'] defense strategy." *See Savoy*, 607 S.W.3d at 126. We hold that relators established good cause for a physical examination under rule 204.1(c).

We cannot hold the same as to relators' request for a mental examination. Hendrickson stated that she would not seek any damages or raise any claims related to any mental effects from the accident and that she would remove or redact all references to mental suffering or the like from her life-care plan. As the trial court observed, "[I]f they're not seeking any mental anguish and they are not seeking any recovery for any mental health concerns past or

6

future, it would seem to be a moot issue." Hendrickson's medical records, prepared by her own experts, contain references to possible pain magnification, and relators can question her doctors on their opinions as to such issues. We hold that the trial court did not abuse its discretion in denying relators' motion to compel a mental examination.

Hendrickson argues that relators are barred by laches from obtaining mandamus relief. She argues that relators could have sought mandamus relief from the first denial of their motion to compel an examination,[3] that her deposition occurred shortly after the denial of relators' first motion and thus cannot explain relators' delay in filing their second motion, and that the second motion "is essentially a motion for rehearing." Hendrickson contends that "[t]here is no good explanation" for relators' three-month delay in seeking reconsideration and that relators' waiting three months to renew their request should be considered sufficient to deny mandamus relief based on laches. However, Hendrickson argued in her opposition to the first motion to compel that the motion was premature, noting that Dr. Jorgensen had not yet reviewed her medical records or her experts' testimony. Further, the COVID-19 pandemic intervened, throwing the courts into an unexpected limbo for several months. We decline to hold that waiting three months, while the COVID-19 pandemic unfolded and during which time Dr. Jorgensen received Hendrickson's medical records for review, was unreasonable or should bar relators from obtaining mandamus relief.

**CONCLUSION**

Although we recognize that this may be a close case and that the trial court clearly undertook a deliberative and careful consideration of the matter, we have held that relators

---

[3] Hendrickson also asserts that relators "did not even ensure that an order reflecting [the first] denial of their motion was signed and filed so as to preserve the issue for appeal."

7

established good cause for the proposed examination. Thus, the trial court should have granted the motion to compel a physical examination, and the supreme court has explained that appeal may be inadequate to remedy the improper denial of a Rule 204.1 motion to compel a physical examination. *See H.E.B.*, 492 S.W.3d at 304-05 ("HEB seeks to allow its expert the same opportunity as Rodriguez's expert to fully develop and present his opinion, ensuring a fair trial. Without that opportunity, HEB lacks an adequate appellate remedy."). Relators similarly have no adequate remedy by appeal. *See id.*; *Savoy*, 607 S.W.3d at 127. We therefore conditionally grant relators' petition for writ of mandamus in part and direct the trial court to withdraw its order denying relators' motion to compel a physical examination and to grant that portion of the motion. Writ will issue only if the district court fails to comply. We deny all other relief.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Baker and Smith

Filed: January 28, 2021

8