

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-26-00068-CV

---

IN RE HEATHER ZERMENO, RELATOR

Original Proceeding
Arising From Proceedings Before the 154th District Court
Lamb County, Texas
Trial Court No. DCV-21115-25; Honorable Scott Say, Presiding

April 16, 2026

MEMORANDUM OPINION

Before DOSS and YARBROUGH and PRATT, JJ.

By this original proceeding, Relator, Heather Zermeno (Mother), seeks to compel the Honorable Scott Say, Judge of the 154th District Court, to vacate his temporary order appointing her and Jose Zermeno (Father) joint managing conservators in the underlying divorce proceeding because doing so violated section 153.004(b) of the Texas Family Code. She requests this Court render judgment appointing her sole managing conservator and remanding the cause to the trial court for a determination of visitation and child support. By a sole issue, she asserts the trial court abused its discretion in appointing Father joint managing conservator in the face of uncontroverted testimony of

domestic violence perpetrated by him. Based on the rationale discussed herein, we conditionally grant relief.[1]

## BACKGROUND

The parties married in May 2005, and they share five minor children and two adult children. Father moved out of the marital home in Olton in 2023 due to a strained relationship with Mother and his affair with a woman named Lisa. Father has a child with Lisa, but the relationship ended before the birth of that child. Mother and Father reconciled but he did not return to the marital home. Father and Lisa co-parent their child. Mother and Father separated again in April 2025, and Father filed for divorce on September 18, 2025.

By his divorce petition, Father sought extraordinary relief requesting he be named sole managing conservator of all five minor children to the exclusion of any possession or access by Mother due to her pattern of alleged neglect of the children. Father and his adult daughter provided affidavits expressing concern over the health and safety of the minor children while in Mother's care. The adult daughter recommended the minor children live with Father.

Mother filed a counter-petition for divorce on September 29, 2025. She sought sole managing conservatorship based on Father's history of family violence during the two years preceding the filing of divorce proceedings. During the pendency of the divorce proceedings, the minor children have been living with Father in Plainview.

---

[1] This Court requested a response from Father but none was filed. *See* TEX. R. APP. P. 52.8(b)(1).

Two adult children, Father, Mother, and Lisa testified at a hearing on Father's request for temporary orders.[2] The adult children and Father complained that Mother was not cleaning the home and was not consistently present to care for some of the younger siblings. They testified to safety concerns, neglect of younger siblings, food insecurity, and difficulty paying bills. The adult children testified to Father's past drinking problem and incidents of domestic violence against Mother and them within the two years preceding the underlying proceedings. Father acknowledged assaulting Mother on several occasions. The gist of Lisa's testimony was that since Father stopped drinking he was a safe parent who was providing financially for his children.

The adult daughter testified Father would get violent when he drank. She revealed an incident in which Father acted inappropriately toward her while Mother was lying on the ground intoxicated. Although she said he was now sober, she could not confirm his sobriety date.

The daughter claimed there was insufficient food in the home to prepare meals. According to the daughter, Mother would go to a friend's house in Lubbock and take the youngest siblings with her and not return until very late at night, leaving her other siblings to take care of themselves.

The adult son admitted his father had punched him in the face a year earlier while Father was drunk. The son also recounted an incident where Father almost struck him with his truck but could not offer a timeline or say if it occurred in the last two years.

---

[2] Lisa testified she was assaulted by Father, but it is not relevant under section 153.004(b) as she was not his spouse.

The son testified he was home when his younger sister cut her finger and required medical attention. He called Mother but she did not answer, and he was concerned she chose not to answer his call. He then called Father and drove his sister to the emergency room where Father met them. But when the son was asked about any present concerns with Mother, he answered, "I would say no." Yet a few questions later, he answered "yes" when asked if he had safety concerns for his siblings.

Father is employed at Plainview's Wal-Mart distribution center. He testified his life has changed "a hundred percent" during the last year because he found God and faith. His relationships have improved as well as his employment. He further testified when he and Mother separated, he noticed issues with the cleanliness of the home. His offers to help were rejected by Mother. He also enlisted his mother and sister to help clean which displeased Mother. He took the children to the doctor for required vaccines and to address lice and tick bites. He also described the incident in which his daughter cut her finger and was taken to the emergency room while Mother was absent from the home.

During cross-examination, Father acknowledged hitting Mother several times in the past when he was intoxicated and struck her shortly before they separated in April 2025 because he discovered she was having an affair. He admitted getting a gun and threatening to kill himself which he described as "dumb." Father estimated he stopped drinking in March 2025 but could not recall the exact date.

According to text messages between Father and Mother which were admitted over objection, he was helping her financially with utilities and other financial obligations. According to Father, she had access to a joint account, and he also provided funds via

4

CashApp.[3]  Father was also providing financial support to his adult children for gas and food.

Mother testified that even after Father stopped drinking, he assaulted her by slapping her.  She was unable to call the police because he took her phone.  The next day, she went to her parents' home, called the police, and made a report.  She did not, however, pursue charges against him.

Mother further testified Father assaulted her numerous times during their relationship.  She described an incident in their front yard when he punched her while he was intoxicated.  She suffered black eyes and a busted lip.  He stopped when she yelled for her children.  They also had an altercation which resulted in her breaking her ankle when he grabbed and tripped her.  After they separated, he threatened to kill himself with a gun because she no longer wanted to be with him and also pointed the gun at her.

Mother complained that Father was controlling and would not let her work.  Father reasoned they had too many children for her to work, and she conceded as much.  She testified her children got lice at school and the tick bites were from their dog.  She admitted she frequently visited a friend in Lubbock, especially on the weekends, and would take her young children with her and leave her other children at home.  She attributed any negative testimony from her adult children to Father's influence and manipulation.  She disputed the home was dirty and they did not have sufficient food.

---

[3] During cross-examination, Father testified if payments on utilities were late, it was not his fault. He testified he supplied the money, but Mother was responsible for making the payments.  Mother testified there was no joint account, but bank statements included her name.

5

Mother testified it would be in her children's best interests to live with her in Olton. They have missed extracurricular activities while living with Father in Plainview and she has had very little communication with them. She is currently employed and has applied to be a substitute teacher.

At the conclusion of the testimony, the trial court kept the status quo until the minor children over age 12 could be interviewed. The trial court later entered a temporary order appointing the parties joint managing conservators of the five minor children with Father having the exclusive right to designate the children's primary residence within Lamb County.

Mother maintains the trial court abused its discretion in appointing Father joint managing conservator in the face of uncontroverted testimony of domestic violence perpetrated by him. We agree.

## STANDARD OF REVIEW

Mandamus is an extraordinary remedy granted only when a relator can show (1) the trial court clearly abused its discretion and (2) there is no adequate remedy by appeal. *In re H.E.B. Grocery Co., L.P.*, 492 S.W.3d 300, 302 (Tex. 2016) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 840–44 (Tex. 1992) (orig. proceeding). To establish an abuse of discretion, the complaining party must demonstrate the trial court acted unreasonably, arbitrarily, or without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). While this standard usually applies to the trial court's failure to perform a ministerial duty, an incorrect construction of the law or a misapplication of the law to undisputed facts is an abuse of

6

discretion which can be addressed by mandamus. *Walker*, 827 S.W.2d at 840. The relator bears the burden to show entitlement to mandamus relief. *Id.* at 837.

## APPLICABLE LAW

Section 153.004(a) of the Texas Family Code provides as follows:

> [i]n determining whether to appoint a party as a sole or joint managing conservator, the court shall consider evidence of the intentional use of abusive physical force, or evidence of sexual abuse, by a party directed against the party's spouse, a parent of the child, or any person younger than 18 years of age committed within a two-year period preceding the filing of the suit or during the pendency of the suit.

Paragraph (b) provides that a court may not appoint joint managing conservators if credible evidence is presented of a history or pattern of past or present child neglect or abuse against the other parent, a spouse, or a child. § 153.004(b). It further provides a rebuttable presumption that appointment of a parent as sole managing conservator with the exclusive right to determine the primary residence is not in the child's best interest if credible evidence is presented of a history or pattern of past or present child neglect or abuse against the other parent, a spouse, or a child. *Id.* Paragraph (d) restricts a parent's access to a child for whom it is shown by a preponderance of the evidence there is a history or pattern of committing family violence during the two years preceding the date of filing suit or during the pendency of the suit.

## ANALYSIS

We begin with whether Mother has established she has no adequate remedy by appeal. The trial court's issuance of temporary orders is not subject to interlocutory appeal making mandamus an appropriate remedy. *In re Telesford*, No. 07-23-00167-CV,

2023 Tex. App. LEXIS 4201, at *5 (Tex. App.—Amarillo June 14, 2023, orig. proceeding) (citing *Dancy v. Daggett*, 815 S.W.2d 548, 549 (Tex. 1991)).  Thus, she has satisfied the second prong for seeking mandamus relief.

A trial court has broad discretion to decide the best interest of children in matters of custody, possession, and visitation.  *In re Marriage of Harrison*, 557 S.W.3d 99, 120 (Tex. App.—Houston [14th Dist.] 2018, pet. denied).  Determining whether the trial court abused its discretion in the underlying proceeding by appointing Mother and Father joint managing conservators is complicated.

Mother relies on the statute's presumption that credible evidence of a party committing family violence prohibits that party from being named a joint managing conservator.  She further relies on the statute's rebuttable presumption that such a party cannot be named sole managing conservator with the right to determine domicile.  She also references *In re Marriage of Stein*, 153 S.W.3d 485 (Tex. App.—Amarillo 2004, no pet.), which stands for the proposition that a trial court abuses its discretion when it appoints joint managing conservators in the face of uncontroverted evidence of family violence.  She argues that because the evidence is undisputed that Father committed family violence within the two-year period preceding the filing of divorce proceedings, the trial court was prohibited from appointing them joint managing conservators.  She posits that because joint managing conservatorship was improper, the trial court should have appointed her sole managing conservator to the exclusion of Father because he is the offending parent.

8

We agree with Mother that the trial court abused its discretion because section 154.003(b) prohibited the appointment of Father as a joint managing conservator given his history or pattern of past or present family violence. Under her analysis, she requests this Court to render judgment naming her sole managing conservator as the only viable option. In a mandamus proceeding of this nature, however, this Court generally reviews the propriety of the challenged order and whether it should be vacated.

The limited mandamus record includes testimony from the parties' adult children indicating possible child neglect by Mother. Thus, we defer to the trial court to determine conservatorship issues when faced with the possibility of two offending parents. We sustain Mother's sole issue.

## CONCLUSION

We conditionally grant mandamus relief. We trust the Honorable Scott Say will vacate his temporary order appointing Father joint managing conservator. The writ will issue only if he fails to do so.

Alex Yarbrough
Justice

9